Ms. Lochner. Your Honor, I'm Ann Lochner from Robbins Kaplan on behalf of the appellant SUNZ Insurance Company. May it please the Court. This Court should reverse the District Court's order for either of two reasons. First, this Court should reverse the District Court's order because there was no supplemental jurisdiction over the cross claims at issue. And second, this Court should reverse the District Court because assuming supplemental jurisdiction existed, the cross claims at issue must be arbitrated. I'll address each of those in turn. First, this Court should reverse the District Court because supplemental jurisdiction does not exist over the cross claims at issue. They do not exist under Section 1367A because the cross claims are not so related to the interpleader claim. And again, it's the interpleader claim that is the sole basis for federal jurisdiction here. They are not so related that they should be considered part of the same case or controversy, nor do they arise out of the same transaction or occurrence under Rule 13g. Now, there is no dispute that the money in the court registry in the interpleader claim comes from a trust account. That trust account is governed by a trust agreement, and that trust agreement is between my client, Sons Insurance Company, and the interpleader plaintiff, Benchmark, which is not a party to this appeal, and then, of course, the trustee. And that account handled collateral that Sons Insurance Company was required to pay into the trust on Benchmark's behalf. In contrast, the claims that arise here, the cross claims, relate to an insurance policy between either Payday or Century, on the one hand, and Sons Insurance Company, and a program agreement between Payday and or Century, on the one hand, and Sons Insurance Solutions, LLC, along with the insurer, SIC. Those two have nothing to do with one another when it comes to the claims, and the collateral that is involved in the cross claims relates to collateral that the Payday and Century are required, under the program agreement, to pay to SAS. Well, help me out with this, and maybe I'm simplifying things, but my understanding is Benchmark has all this extra money because of taking excess collateral from others, right? So there's this $20 million pool, and the breach of contract action is basically like, we shouldn't have had to pay all that collateral, some of which is sitting in the account. So how are those claims not related to each other? I'm having trouble following. Your Honor, you're not alone, for sure. It is complicated because the other side has done a good job of trying to suggest that they are one and the same, when they really are not. The collateral paid under the program agreement is one type of collateral with a certain formulation that Payday and Century pay to SIS. Separately, SIC, Sons Insurance Company, has an obligation to pay collateral to Benchmark using a different calculation. So we have two categories of collateral that are different and that arise under different contracts. It would be somewhat like, Your Honor, if I had a house, I have a mortgage on my house, but I rent it out, I've got the rental obligation here that I'm being paid rent, and I've got my mortgage obligation, but I may use my rental income to pay my mortgage, but they're two separate payment obligations, and they're two separate contracts. What would happen here, Your Honor, is that even if Payday and Century were to prevail on their breach of contract claims, which we don't think they would, but hypothetically here, if they did, they would have a judgment against Sons Insurance Company. That would not entitle them to the money that originated from the trust account that is now in the court registry. So these are not the same transaction and occurrence, and supplemental jurisdictions should not have been applied. But even if supplemental jurisdiction were to exist, the district court should not have exercised that supplemental jurisdiction under 1367C because multiple exceptions apply. For instance, what we have here is complex and novel state law that has to be applied. We're talking about Florida insurance law that the court will have to dive into to understand their claims. Not at all applicable in the interpleader action. Also, the cross claims here will substantially dominate over the interpleader claims. There's just over a million dollars left in the interpleader action, and these two parties together are seeking approximately $10 million in damages. So the tail is going to wag the dog there, Your Honor. Furthermore, all non-diverse claimants have been, or I should say interpleader defendants, have been dismissed. Not because we fought it out and they were deemed to not be entitled to it, because they all just claimed the money from the get-go, saying they weren't making a claim on it. So the point being here, Your Honor, if this case were to be brought in court today as in its current posture, there would be no subject matter jurisdiction, because even the minimal diversity requirement that the interpleader statute 1335 requires does not exist. Also, don't we look to diversity at the time the claim was filed? You do, Your Honor, but I think for the purposes of 1367C, what I would argue is that this is more akin to a situation where perhaps federal jurisdiction was the basis for jurisdiction and there were state claims that were granted supplemental review, and then the federal claim is dismissed early on or at some point, where it does not make sense to continue exercising jurisdiction, supplemental jurisdiction, over those remaining claims. Here we're at the very beginning of these cross-claims, and the basis for federal jurisdiction, if it exists at all, is really, if anything, hanging by a thread. It doesn't justify being the anchor to such large claims in cross-claims. Again, we have to keep in mind that this is interpleader jurisdiction. This is not federal question jurisdiction or diversity jurisdiction. Interpleader jurisdiction is broader in some senses because it has nationwide process, service of process, so people can be brought in to districts that they would never otherwise have to be brought in for. However, they're brought in for a very narrow purpose. Do you have an entitlement to this money, and if so, seek it. But to then bring in cross-claims, state law cross-claims from non-diverse parties, that is not the type of supplemental jurisdiction that any court should exercise, assuming it exists to begin with. Counsel, because time grows short, I'd like to go ahead and head to the arbitration claim. It seems to me we've got two very instructive, potentially instructive cases here, Buckeye and what I will call interface construction. But we don't know which of those to apply until we know what the operative contract or agreement is. And so I'd like to turn to some language in the insurance policies. The insurance policies state, and I'm quoting, the only agreements relating to this insurance are stated in this policy, end quote. And so my question is, why isn't that a valid integration clause? For a couple reasons, Your Honor. One, it is focused on this insurance is the language that that clause uses, and there is nothing in the program agreement that affects the insurance. The insurance is about the coverage, what coverage there is, the extent of that coverage. But what I'd say, Your Honor, to step back for a moment, the issue is really does that provision that you just read invalidate the entirety of the program agreement? And that really is what the cross-claimants here are arguing. Well, if it's a valid integration clause, it wouldn't invalidate it. It would just say that we're only going to look within the four corners of this document. We're not going to go somewhere else to find an arbitration clause. Well, Your Honor, I think you have to look at the program agreement as well, and that program agreement contemplates the issuance of a policy. And, in fact, it doesn't even become effective until the policy is issued. So it's not as if there was a contract, the parties operated under it for several years, and then created a new contract. These two have to be read together. And, in fact, the insurance policy itself, with the endorsements for collateral, requires some sort of collateral to take care of the high level of the large deductible here. That's what the program agreement is intended to do. So if you don't have the program agreement, they're in violation of the policy. So this really does fall under the Buckeye Supreme Court precedent, Your Honor, where you have two types of challenges, one being the challenge to the specific arbitration provision, and the second being a challenge to the contract as a whole that just so happens to have an arbitration provision. And the court in Buckeye was very clear. Where you're arguing that it's an invalidation of the contract as a whole, that is for the arbitrator. So they can certainly make that argument, Your Honor, that that language that you just read somehow invalidates the contract as a whole. But under Buckeye, it has to be an argument for the arbitrator and not for the court. Here, what happened was the court misapplied this circuit's express scripts case. And in that situation, there was that first type of challenge that the Buckeye court described, where there is a specific attack on the arbitration provision. And in that case, it was Agon, if I'm pronouncing that correctly, had brought an arbitration seeking damages for breach of contract. And it was express scripts, ESI, that brought the federal claim, the federal declaratory judgment claim, seeking a declaration that the arbitration provision itself was invalid. So it was falling within that first category of challenges that Buckeye described. Here, the court followed or at least applied scripts to a certain degree. It actually then, I think, went further and essentially got to the merits and effectively seemed to hold that the program agreement was invalid, even though it said it couldn't reach that. So, Your Honor, I would say that the Buckeye case clearly requires that the issue of whether that program agreement still exists is valid. That has to be decided by the arbitrator. And for that reason, Your Honor, we would respectfully ask that this court either dismiss this case for lack of supplemental jurisdiction or remand to the district court with directions to compel arbitration. I will reserve the rest of my time unless the court has any questions right now. Seeing none.  Good morning, and may it please the Court. On behalf of Century and Payday, we are asking the court to find that the district court probably found that Sun's motion to dismiss should be denied because subject matter exists for these cross-claims. And I will cut to what I think is the central issue because there's no dispute that initial original jurisdiction existed for the interpreter action at the time that the case was filed. Once we have original jurisdiction, the court shall exercise supplemental jurisdiction when it arises out of the same case or controversy. That's precisely what is happening in this case. And to give a contextual approach to this case based on the allegations that are in the interpreter complaint and the cross-claims and for the purposes of this motion to dismiss, we need to accept Century and Payday's allegations as true and in the light most favorable to them. Do you agree, Counsel, with the analogy here? The analogy she gave was you've got one contract with the payment of rent. You've got another contract with your mortgage company where you pay your mortgage company. They're two separate contracts, and there may be some loose relationship between the two, but you're not really arguing about the same thing. Do you think that's accurate? And if not, tell me why it's not. I disagree. Okay. Here's why. If you look at the benchmarks interpreter complaint, how this started, they included SUNS and SIS because of the claim that they are intermingling funds. So SIS, SUNS Insurance Solution, is the managing agent for both Benchmark and SUNS. And by the way, SUNS and Benchmark, Benchmark is essentially a fronting company for SUNS, for the states in which SUNS cannot write insurance itself. So they have an agreement by which SUNS is the indirect insurer in many cases, and Benchmark is the fronting insurer. SUNS Insurance Solution collects the collateral from all the insureds, the insureds specifically Sentry and Payday. And so the allegation in the interpreter complaint, why SUNS was brought into this interpreter to begin with, is because of the allegation that they are intermingling the funds among Benchmark, and SUNS Insurance Company, in between its insureds. And again, the allegations from Benchmark are that we have this excess deductible collateral, which undisputedly, Sentry and Payday provided their deductible collateral. And what Sentry and Payday allege in both the interpreter and its cross claims, is that you, SUNS Insurance Solution, with Benchmark and SUNS Insurance Company, through this fronting agreement, reinsurance agreement, is that you have improperly calculated this deductible collateral, you've improperly collected it, and therefore we are entitled to the return of our excess deductible collateral. And these facts, as set forth in our cross claim in response to the interpreter, permeate the interpreter and the cross claim, such that they are intertwined, and the district court found, this is the type of case it would make sense to all be tried in one case. Instead of talking about whether, specifically when there's allegation that they're intermingled, and that this is all one specific insurance agreement, in which Benchmark, SUNS Insurance Solution, and SUNS Insurance Company are intertwined, that it would not make sense to have them tried in separate proceedings. And so, the cross claims in the interpreter, the allegations in our cross claim in the interpreter, are all nearly identical, talk about the exact same insurance arrangement that we have here. And so, they arise out of the same case in controversy, and the district court properly determined that it was going to exercise supplemental jurisdiction, because it found it makes sense to be tried in one judicial proceeding. And, while it's not necessarily the issue here, the reason this is in a Minnesota court to begin with, is because SUNS couldn't write in Minnesota. SUNS entered into an insurance agreement with a Minnesota company, Benchmark Insurance Company, and they have a reinsurance agreement, such that Benchmark is the fronting insurer in Minnesota, but SUNS is the indirect insurer. And they are indirectly receiving Minnesota premiums, handling Minnesota claims, and so it's not as if this is some random courtroom. That is, they entered into a business arrangement with a Minnesota company that incorporated an insurance plan in Minnesota court. Where is the, you know, the requirements that you're suing on, on collateral and intermingling and all of that, what agreement governs those? The insurance policies. So, the insurance policies themselves talk about collateral, because I know the program agreements also talk about the collateral requirements. Yeah, is it possible, I hate to do this. Oh, please. Here's my question. Is it really possible to determine the questions presented here, looking just at the insurance agreement, without construing the program agreement as well? I mean, because that seems to me to be at the heart of the question that's being raised here. Is it possible to determine what our deductible collateral is under the insurance policy? Alone. Alone, alone. That is our position that it's our allegation that this policy was entered into subsequent to the program agreement. It says these are the only terms. There's another statement that says the only way to modify this policy is through endorsements, and the program agreement is not an endorsement. So it's our position that it shouldn't be used to modify the policy. Well, let me ask you this. Where in the insurance policy does it talk about the collateral requirements upon which you're suing? Because I know it's pretty clear in the program agreements. Right. To be honest, I can't tell you standing here today where in the policy. Yeah, I couldn't really find it. I couldn't find much of anything, and here's my problem. You can't kind of have it both ways, which is to say that this is an integrated agreement under the insurance policies and then not be able to point to anything you're suing on. But to sue on this, you have to be suing on the program agreements. I can't fully answer your question because I don't have all the terms of the policy memorized. So to be frank, I can't fully answer your question. I just know my client's position and their allegations, which is how you've collected this collateral is in violation of the insurance policy. I don't know if that goes more towards the second point. It does. It's on the motion to compel arbitration. They're related, but my problem is you can't sue on basically the program agreements and then say the arbitration clause in the program agreements doesn't apply. At the bottom line, that's my real question, regardless of what the insurance policies say about integration. Our claim, and I cannot fully answer without unfortunately being fully versed on the insurance policy, is that they have breached the insurance policy. It's our claim that this is a subsequent contract that they entered into that SUNS has breached. We're not suing. There's no allegation in our cross-claim that says you have breached the program agreement. So if our allegation was you breached the program agreement, then certainly I think we would have something more to talk about on that end. At this point, we have to take the allegations as true. And the allegations seem to limit the claim to the insurance policies. What if in the course of the litigation it turns out that you have to refer to the program agreement to prove your claim? Doesn't it automatically kick you into arbitration at that point? It's difficult to answer without knowing. I'm not saying the program agreement doesn't exist in parts of their insurance arrangement, but what our specific claim is that it's in the insurance policy. And certainly it's hard to answer if at a later date we were arguing that the program agreement was part of the policy, which we wouldn't. Well, that's not actually necessary. I mean, the real problem is this. As I look at it, if I look at just the insurance policy and I say that it's a wholly integrated contract and that's what I've got, and you've made an allegation of breach, I can't define what the breach is because I have no clue looking at the insurance policy what the amount of collateral contribution ought to be and where it's at and how it's been collected and what's wrong with it. In order to understand how it came to be and what it is, I have to look at the program agreement. And it seems to me that that, I mean, and maybe I just can't read the policy, and I'll be the first to admit that that's certainly within the realm of possibility. But when I looked at it, I just couldn't put the pieces together without looking at both the documents. And if that's where they're at, I think on the arbitration question at least, it's ultimately for the arbitrator to decide. Arbitrator, I guess. While there are aspects of the program agreement that interplay in their relationships, the precise terms of the policy should control here because it is the subsequent agreement. This is the subsequent agreement. SUNS drafted this policy. SUNS could have placed an arbitration provision within its insurance policy if it intended for the breaches of the policy to have been arbitrated. It's not included. So even if there are other arrangements, this is the subsequent agreement. I get all that, except I have a problem that I think you may box yourself into a corner that when you get done saying it's a wholly integrated contract, we have a contract and we've got some collateral, but we can't then look at the program agreement to decide it, right? Because that's the corner you've painted yourself into. I'm not sure that's where your clients want to be. Now, I may be just absolutely out on left field on this thing, but I'm just worried about it. I understand your concern. Counsel, let me approach it this way. Your opposing counsel says that the integration clause is not all-encompassing because it refers to, quote, this insurance, and insurance is capitalized. How is insurance defined? I guess the question is, why is it not an all-encompassing integration clause? Why is it more limited, as your son's counsel argues? I think this is an insurance policy, and the only agreements related to this insurance, I think it is an all-encompassing policy, if that's what your question is. Whether the integration clause is all-encompassing or whether it's somehow limited more narrowly because of the phrase, this insurance. Right. I don't think that this insurance narrows it. I think this insurance is plainly talking about this insurance policy and anything related to the insurance policy. I think that this is a fully integrated policy, and this is what we're suing on. I'm happy to answer any other questions for the court. Otherwise, I will rest. Thank you. Thank you. Your Honors, there have been a few questions about the records, so I'm just going to take a few minutes and maybe point to some areas that might be helpful on that front. Appendix 742, realizing I've gotten cheaters since COVID and I may have some issues here, but this is the beginning pages of the program agreement. Judge Graz, you had asked some questions about this. I think this helps explain what you're calling an integration provision, but which I would not. On Appendix 742 in the program agreement, it says, the binding terms and conditions constitute your insurance program. This agreement will control the administration of your insurance program and shall become effective upon the first issuance of an insurance policy. It goes on to say, the creation and sufficient funding of the loss fund is required prior to the issuance of any policy, is a mandatory and material component of your ongoing insurance program, and will be used to reimburse funds for your deductible payment obligation. So the program agreement is a necessary, and I'll refer also to Appendix 878, and to be clear, I'm referring to the payday agreements at this point in policies. The century also exists in the record. But there's a loss reimbursement large deductible endorsement. There's a couple of them because they have different states. But they say, the collateral is a mandatory requirement for this plan. Failure to meet collateral requirements may result in the cancellation of the loss reimbursement large deductible endorsement in this form only. And so the idea is that the policy makes clear that they have collateral obligations and that they have to do something to satisfy those. That's what the program agreement is. They have to have the program agreement before they can really get the policy. So they have to be read together. Counsel, what can this court look at at this stage in the motion to dismiss in terms of beyond the allegations? In a motion to dismiss under 12b1, Your Honor, and I have the site. In fact, I think it's in our brief. But you can look beyond the pleadings for purposes of 12b1. I briefly want to point out, too, in Appendix 235, this is the cross-claim. And I apologize, this is actually the Butler cross-claim, which is no longer relevant, but it's the same cross-claim. In the cross-claim, they use the word program agreement nine times. As program agreement, they refer to agreement without program in front of it, even though it's referring to program a few more times. So you cannot separate the program agreement from their claims here. These must be arbitrated, assuming that there is a subject matter jurisdiction to begin with. So we would ask that the court reverse the district court for either of the reasons that I stated today. I appreciate your time, Your Honors. Thank you. The matter is taken under advisement, and we will issue an opinion in due course.